[Cite as *State v. Cartwright*, 2017-Ohio-7212.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY

STATE OF OHIO,                             :

    Plaintiff-Appellee,              :

                           :

    - vs -

                           :

LOREN A. CARTWRIGHT,                       :

    Defendant-Appellant.            :

CASE NO. CA2016-11-018

O P I N I O N
8/14/2017

CRIMINAL APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
Case No. CRI20160078

Michael DeWine, Ohio Attorney General, Robert Cheugh and Henrique Geigel, 30 East Broad Street, 25th Floor, Columbus, Ohio 43215, for plaintiff-appellee

Scott & Nolder Co., LPA, Michelle N. Eiler and Steven S. Nolder, 65 East State Street, Suite 200, Columbus, Ohio 43215, for defendant-appellant

**M. POWELL, J.**

{¶ 1} Defendant-appellant, Loren Cartwright, appeals a judgment of the Fayette County Court of Common Pleas ordering him to pay restitution to the state of Ohio following his conviction for open dumping.

{¶ 2} Appellant owns and operates Cartwright Salvage Company, a residential hauling company located on Bogus Road in Washington Court House. The company has

contracts with approximately 1000 customers to collect their refuse on a weekly basis and haul it to a solid waste landfill for disposal. Appellant and his family have operated the business for over 50 years.

{¶ 3} In 2009, the Fayette County Health Department ("FCHD") learned that appellant had been dumping refuse on his Bogus Road property. FCHD notified appellant of the improper dumping. Over the next several months, appellant removed the refuse from the property. Appellant subsequently began experiencing financial problems. Unable to pay the landfill to take the refuse, appellant once again began dumping refuse on his property. The refuse pile eventually grew to be 100 feet long, 70 feet wide, and 15 to 20 feet high.

{¶ 4} In the early morning hours of April 21, 2015, the local fire department responded to a large fire on appellant's property caused by the spontaneous combustion of the refuse pile. FCHD subsequently inspected the property, confirmed the improper dumping, and discovered there was a rat infestation on the property. FCHD contacted the Ohio Environmental Protection Agency ("OEPA"). The ensuing investigation revealed that after appellant was notified that dumping refuse on the property was illegal, he and his employees dug several pits on the property and buried a substantial amount of refuse in an attempt to conceal it from the authorities. Appellant eventually worked with the authorities to remove the refuse from the property and remedy the environmental hazard. However, as the refuse dwindled, rats began migrating to neighboring properties.

{¶ 5} Due to this public health emergency situation, FCHD applied to OEPA for a grant to clean up the property and abate the rat infestation. OEPA awarded FCHD a $100,000 grant from the Environmental Protection Remediation Fund.[1] FCHD used the grant

---

1. The Environmental Protection Remediation Fund is a fund promulgated under R.C. 3734.281. Pursuant to the statute, money collected from judgments for the state may be paid into the state treasury to the credit of the fund. R.C. 3734.281 provides that OEPA "shall use the moneys in the fund only for the purpose of remediating conditions at a * * * solid waste facility * * * or another location at which the director has reason to believe there is a substantial threat to public health or safety or the environment."

to hire two separate companies to exterminate the rats and remove the refuse. FCHD spent $105,741.69 in remediating the property.

{¶ 6} Appellant was indicted in April 2016 on one count of open dumping and two counts of operating a solid waste facility without a license. Appellant subsequently pled guilty to one count of open dumping in violation of R.C. 3734.03, an unclassified felony. The trial court requested briefing on whether it could order restitution for the costs of remediating the property. On October 13, 2016, following a sentencing hearing and upon finding that appellant's egregious conduct had created a significant health hazard that demanded immediate attention, the trial court sentenced appellant to one year of community control and ordered him to pay $84,486.69 in restitution to the state of Ohio to the benefit of the Environmental Protection Remediation Fund and a $10,000 fine.

{¶ 7} Appellant now appeals, raising one assignment of error:

{¶ 8} THE TRIAL COURT ERRED BY AWARDING RESTITUTION.

{¶ 9} Appellant argues the trial court erred in awarding restitution to the state for the costs of cleaning up his property and abating the rat infestation because the state is not a "victim" of his crime as that term is defined in R.C. 2930.01(H)(1) and applicable case law, but rather a third party who is not entitled to restitution.

{¶ 10} As part of a defendant's felony sentence, R.C. 2929.18(A)(1) allows a trial court to order restitution "by the offender to the victim of the offender's crime * * * in an amount based on the victim's economic loss." If the court imposes restitution, the statute further provides that restitution may be made "to the victim in open court, to the adult probation department that serves the county on behalf of the victim, to the clerk of courts, or to another agency designated by the court."

{¶ 11} The issue of who constitutes a "victim" under R.C. 2929.18(A)(1) or to whom restitution may appropriately be awarded under the statute is a question of law that is

reviewed de novo. *See State v. Shifflet*, 4th Dist. Athens No. 13CA23, 2015-Ohio-4250; *State v. Harris*, 6th Dist. Wood No. WD-14-069, 2015-Ohio-4412; *State v. Maurer*, 8th Dist. Cuyahoga No. 103162, 2016-Ohio-1380; *State v. Johnson,* 10th Dist. Franklin No. 14AP-336, 2014-Ohio-4826; and *In re M.A.*, 11th Dist. Lake No. 2015-L-075, 2016-Ohio-1161.

{¶ 12} R.C. 2929.18 does not define "victim." In support of his position that the state is not a victim entitled to restitution, appellant cites R.C. 2930.01(H)(1) which defines a "victim" as "[a] person who is identified as the victim of a crime * * * in a police report or in a complaint, indictment, or information that charges the commission of a crime and that provides the basis for the criminal prosecution * * * and subsequent proceedings to which this chapter makes reference."

{¶ 13} In the criminal law context, some Ohio appellate districts have relied on R.C. 2930.01(H)(1) in determining who is a victim for purposes of restitution. *See, e.g., State v. Thornton*, 1st Dist. Hamilton No. C-160501, 2017-Ohio-4037; *State v. Hunter*, 2d Dist. Montgomery No. 25521, 2013-Ohio-3759; *Harris*, 2015-Ohio-4412; and *Maurer*, 2016-Ohio-1380. Other appellate districts have declined to use R.C. 2930.01(H)(1)'s definition of a "victim" outside of R.C. Chapter 2930, finding that the definition set forth in R.C. 2930.01(H)(1) is "specific only to" R.C. Chapter 2930. *See State v. Ritchie*, 174 Ohio App.3d 582, 2007-Ohio-6577 (5th Dist.); *State v. Goudy*, 7th Dist. Belmont No. 15 BE 0046, 2016-Ohio-5193. We agree with the latter position. R.C. Chapter 2930 governs victims' rights and the definitions set forth in R.C. 2930.01, including that of a "victim," are specific only to R.C. Chapter 2930. *See* R.C. 2930.01 (which specifically states, "As used in this chapter," before defining several terms). Accordingly, R.C. 2930.01(H)(1)'s definition of "victim" has limited scope and no application to who a sentencing court may consider a "victim" for purposes of restitution under R.C. 2929.18(A)(1).

{¶ 14} In support of his position that the state is not a victim entitled to restitution,

- 4 -

appellant further cites several decisions from the Second, Third, Fourth, and Sixth Appellate Districts. Those cases generally hold that banks and government agencies are third parties that are not entitled to restitution because they were not actual victims of the defendant's crimes or were not victims under R.C. 2930.01(H)(1).

{¶ 15} As stated above, R.C. 2929.18(A)(1) sets forth four possible payees to whom a sentencing court may order restitution to be paid: the victim, adult probation departments, clerks of courts, and "another agency designated by the court." Thus, "a trial court under the current version of R.C. 2929.18(A)(1) retains the discretion to order that restitution be paid to certain third parties, namely, an adult probation department, the clerk of courts, or another agency designated by the court." *State v. Bartholomew*, 119 Ohio St.3d 359, 2008-Ohio-4080, ¶ 14. Had the Ohio General Assembly "truly intended that restitution could be paid only to a victim, it would have eliminated adult probation departments, clerks of courts, and other agencies as designated by the court as possible payees" when it amended R.C. 2929.18(A)(1). *Id.* at ¶ 15.

{¶ 16} We find that the decisions cited by appellant are distinguishable or inapplicable. Some decisions involved a bank, and not a governmental agency. *See State v. Kiser*, 2d Dist. Montgomery No. 24419, 2011-Ohio-5551; *Harris*, 2015-Ohio-4412. Other decisions, while involving law enforcement or other governmental agencies, denied restitution on the ground the agencies were not victims as the term is defined in R.C. 2930.01(H)(1) or were simply expending funds or incurring expenses in the performance of their duties. *See State v. Toler*, 174 Ohio App.3d 335, 2007-Ohio-6967 (3d Dist.) (sheriff's office not entitled to restitution for costs incurred in extraditing defendant; restitution available only to the actual victim of the offense); *State v. Steward*, 6th Dist. Lucas No. L-14-1083, 2015-Ohio-3081 (state conceded restitution to dog warden for defendant's dogs' boarding and medical expenses was improper; dog warden was not a victim under R.C. 2930.01[H]); *State v.*

*Samuels*, 4th Dist. Washington No. 03CA8, 2003-Ohio-6106 (sheriff's office not entitled to restitution for voluntarily spending its own funds to pursue a drug buy); *Hunter*, 2013-Ohio-3759 (fire department not entitled to restitution for arson investigatory expenses; fire department was not a victim under R.C. 2930.01[H][1]); and *State v. Wolf*, 176 Ohio App.3d 165, 2008-Ohio-1483 (3d Dist.) (fire departments not entitled to restitution for expenses incurred in conjunction with an arson fire; fire departments were not the victims of defendant's arson offense).

{¶ 17} Black's Law Dictionary defines "victim" as "[a] person harmed by a crime, tort, or other wrong." *Black's Law Dictionary* 1598 (8th Ed.2004). Identification of the "victim" of a crime necessarily implicates a consideration of the immediate interest sought to be defended by the criminal statute involved. The cases cited by appellant and involving governmental agencies certainly stand for the proposition that expending funds or incurring expenses in the performance of a public duty regarding a defendant's offense does not confer "victim" status to the responding agency. It is apparent that the immediate interest sought to be protected by the criminal statutes involved in those cases was not the fiscal integrity of the governmental agencies incurring expenses in performing public duties in response to criminal activity. For instance, the arson and theft statutes protect the interests of property owners, not that of responding fire departments and law enforcement agencies. By contrast, the immediate interest sought to be protected by R.C. 3734.03, which prohibits open dumping, is the public health and safety. In this sense, the expenses incurred by OEPA to remediate the threat to the public health and safety caused by appellant's illegal dumping and resulting rat infestation is not akin to a fire department responding to an arson fire. The trial court could reasonably have determined that the public, specifically the Washington Court House community and appellant's neighbors, is the victim of appellant's offense, and that the OEPA represents the public in this regard.

**{¶ 18}** We find that R.C. 2929.11(A) supports our position. R.C. 2929.11(A) provides that

> A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing. The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources. *To achieve those purposes, the sentencing court shall consider the need for* incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and *making restitution to the victim of the offense, the public, or both.*

(Emphasis added.) Reading R.C. 2929.11(A) in conjunction with R.C. 2929.18(A)(1) suggests that restitution to the public under certain circumstances is proper to the extent the sentencing court reasonably determines that the public is the "victim" of the offense. In sentencing appellant, the trial court found that appellant's egregious conduct of illegal dumping and the resulting rat infestation created a significant public health and safety hazard to the community and appellant's neighbors that demanded immediate and drastic attention. The trial court, therefore, did not err in ordering appellant to pay restitution to the state. *See State v. Gunn*, Franklin C.P. No. 09CR-03-1438, 2009 Ohio Misc. LEXIS 9033 (Nov. 25, 2009) (ordering defendant to pay restitution to the "victim[s]", Franklin County General Health Fund and OEPA, following defendant's conviction for open dumping, water pollution, and operating a solid waste landfill without a license).

**{¶ 19}** Appellant's assignment of error is overruled.

**{¶ 20}** Judgment affirmed.

HENDRICKSON, P.J., and S. POWELL, J., concur.