[Cite as *State v. Edner*, 2017-Ohio-1365.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 104594**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JOHN E. ESNER

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED IN PART, REVERSED IN PART,
REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-604184-A

**BEFORE:** S. Gallagher, J., McCormack, P.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** April 13, 2017

**ATTORNEY FOR APPELLANT**

John F. Corrigan
19885 Detroit Road, #335
Rocky River, Ohio    44116


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
By:    Christine M. Vacha
Assistant Prosecuting Attorney
Justice Center - 9th Floor
1200 Ontario Street
Cleveland, Ohio    44113

SEAN C. GALLAGHER, J.:

{¶1} John Esner appeals the sentences imposed on a single count of theft and three counts of forgery. All are fifth-degree felonies. The trial court, after specifying that Esner had been on postrelease control at the time he committed the offenses, imposed a one-year term of imprisonment on each count to be consecutively served to each other for an aggregate sentence of four years. We affirm in part, reverse in part, and remand.

{¶2} Neither Esner nor the state provided a recitation of the facts as required under App.R. 16(A)(6). App.R. 16(A)-(B) (the parties shall include in their briefs a statement of facts relevant to the assignments of error presented for review, with appropriate references to the record). We take this omission to mean that the facts of Esner's criminal conduct are not dispositive of the assigned errors. *Id*. Nevertheless, and so any reader is not placed in the situation that we find ourselves, we shall provide a brief statement of the facts as can be discerned from our own review of the record.

{¶3} At the time of the offenses, Esner was on postrelease control, having just completed an eight-year term of imprisonment for other theft-related offenses. Esner, a middle-aged man, has spent most of his adult life behind bars. According to Esner, he spent only a couple of years out of some form of criminal confinement. At the time of the latest felony offenses, Esner was providing services for a church and was owed money for the work performed. While the check was being prepared, Esner was left alone in the church office or at least left unobserved for a short period of time. He took the opportunity to grab nearly 40 blank checks. Esner then made six checks out to himself,

totaling approximately $2,100. It is not clear where Esner attempted to cash those checks, if they were indeed cashed. Esner pleaded guilty to uttering the forged checks, but the indictment does not elaborate on what the uttering entailed in practical terms. According to the prosecutor's statement during the change of plea colloquy, the "financial institution" did not cash the checks and no restitution should be imposed. A representative from the church indicated that it had not been deprived of any funds. For all this, Esner agreed to plead guilty to the theft of the blank checks and for forging three of the six checks. The aggregate amount of the forged checks to which Esner pleaded guilty was $1,127.34. The remaining counts were nolled.

{¶4} The trial court felt that someone was out the money, most likely an obvious presumption if Esner indeed succeeded in cashing the checks made out to himself. The trial court identified FirstMerit Bank as the financial institution that was economically harmed, although that fact was not in the record or provided by the state during any oral hearing. In fact, the only mention of "First Merit" in the record came from the trial court during the plea and sentencing hearings. Restitution was imposed, over Esner's objection, in the amount of $1,703.79 to be paid to "First Merit Bank." That amount appears to have come from the registered warrant, which alleged that Esner uttered four checks. It also appears in the presentence investigation report, but the report repeated the language from the warrant.

{¶5} In this timely appeal, Esner complains that restitution was improper, that the trial court relied on irrelevant factors for imposing consecutive sentences, and that the

offenses should have merged because they arose from the same conduct. The state "concedes" that the theft, which was predicated on stealing the blank checks,[1] should have merged with the forgery counts because "the forgery counts pertain to the checks." One crime "pertaining" to another is not a recognized form of analysis to determine whether offenses are allied and subject to merger. The state's concession seems somewhat inadvisable in this respect. We do agree that the trial court's imposition of restitution was improper, but we affirm the convictions in all other respects.

{¶6} Beginning with the allied-offense issue, under R.C. 2941.25, courts must use a three-part inquiry to determine whether a defendant can be convicted of multiple offenses if those offenses arose from the same act or transaction:

> (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.

*State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 31. In addition, "a defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense." *Id.* at ¶ 26. The test is stated in the disjunctive form: the existence of any one prong suffices for the imposition of separate sentences.

---

[1]One of the nolled counts was a second theft in violation of R.C. 2913.02(A)(1) for the theft of between $1,000 and $7,500.

**{¶7}** Despite the fact that no one presented a factual basis for their argument as required by the Rules of Appellate Procedure, both the state and Esner solely rely on the same-conduct analysis — a fact-intensive inquiry — claiming that Esner committed the forgery and the theft of the blank checks simultaneously. This ignores the fact that Esner committed each act of forgery and the act of stealing the blank checks through separate acts or with distinctly different conduct. Had Esner pleaded guilty to the nolled theft count pertaining to the theft of between $1,000 and $7,500, we might be inclined to agree with the parties. *See generally State v. Marneros*, 2015-Ohio-2156, 35 N.E.3d 925, ¶ 3 (8th Dist.). We, however, are not faced with that issue.

**{¶8}** Esner pleaded guilty to theft in violation of R.C. 2913.02(A)(1) because he purposely deprived the church of blank checks and knowingly obtained and exerted control over those blank checks without the consent of the owner, and because blank checks are listed in R.C. 2913.71, the offense was a felony of the fifth degree as a matter of law regardless of the intrinsic value of the property. Esner was also convicted of three separate counts of forgery in violation of R.C. 2913.31(A)(3) by purposely defrauding the church through the uttering of three fraudulent checks. Although the theft facilitated the forgery, and thus could be considered a single course of conduct, the crimes were all based on separate and distinct acts. *See, e.g., State v. Smith*, 11th Dist. Geauga No. 2014-G-3185, 2014-Ohio-5076, ¶ 26. The theft was complete once Esner left the church with the blank checks. *State v. Washington*, 8th Dist. Cuyahoga No. 100994, 2014-Ohio-4578, ¶ 28 (once one crime is complete, the commission of a second crime is

separate and distinct from the commission of the first). The theft offense does not merge with any of the forgery convictions. The theft occurred as the product of separate conduct under the *Ruff* analysis.

**{¶9}** Further, nothing in the record demonstrates when or how Esner forged or uttered the separate checks for the purpose of determining whether the forgery counts should merge amongst themselves. Esner's argument is limited to consideration of the allegations that the forgeries occurred on the same day, which is essentially the same argument overruled in *State v. Rogers*. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 15 (the defendant unsuccessfully argued that multiple sentences for receiving stolen property cannot stand if the offender received the stolen property in a single transaction). Esner did not raise the merger issue at sentencing, and we cannot find plain error under these circumstances. There is no factual basis to review whether the offenses were committed with the same conduct or occurred simultaneously. *Id.* at ¶ 25.

**{¶10}** Esner asks us to consider the holding from *Marneros*, 2015-Ohio-2156, 35 N.E.3d 925, at ¶ 43, as dispositive. *Marneros*, however, involved a theft of cash proceeds that was merged with a forgery offense because the theft was solely predicated upon the underlying forgery acts. Stated another way, in *Marneros* the act of uttering the forged checks simultaneously constituted the theft itself. This is an important distinction. Although there is no express indication in *Marneros* whether the theft was of blank checks or cash proceeds, we can infer the latter because of the severity of the sentence.

A theft of blank checks is a felony of the fifth degree. R.C. 2913.02(A)(1). We know the theft offense in *Marneros* involved the theft of $8,413.39, and we also know that the sentence was at least a third-degree felony — the defendant was sentenced to a 36-month term of imprisonment. *Id.* at ¶ 5, 15 (indicating the economic harm was greater than $7,500 but less than $10,000 and the victim was 71 years old).

{¶11} Under R.C. 2913.02(B), the only applicable sentencing paradigm implicating a third-degree or higher felony range for a theft offense when the value of the stolen goods exceeds $7,500 but is less than $37,000 is R.C. 2913.02(B)(3), which makes it a third-degree felony if the victim is elderly or disabled. Thus, we can infer that the forging of the checks, legally defined as uttering a writing the person knows to have been forged under R.C. 2913.31(A)(3), and the theft of over $7,500 in cash occurred simultaneously. *Id.* *Marneros* is distinguishable from the current facts because Esner pleaded guilty to stealing blank checks, not an amount between $1,000 and $7,500. As a result, it must be concluded that the guilty plea was to the commission of crimes inherently involving separate conduct. Esner's reliance on *Marneros* is misplaced.

{¶12} We recognize that merger analysis is at times a tortured process for trial judges, defense counsel, and prosecutors alike. This is especially true when, as here, the events seem intertwined and dependant. Nevertheless, we must apply the merger analysis as construed by the Supreme Court of Ohio. *Ruff,* 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892. The subtle distinction between the general motive to steal and the narrower method of how that theft is accomplished becomes paramount.

Parties must become ever vigilant at the time of the plea and sentencing to assess the effect of the counts they are pleading to or being sentenced on for merger purposes.

**{¶13}** We also are required to overrule Esner's challenge to the imposition of individual prison terms to be consecutively served. The applicable statute, R.C. 2929.14(C)(4), authorizes the court to order consecutive service of sentences if consecutive service (1) is necessary to protect the public from future crime or to punish the offender; (2) is not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and additionally, (3) if (a) the offender committed the offense while awaiting trial or sentencing, under community control monitoring, or under postrelease control for a prior offense; (b) at least two of the offenses caused harm so great and unusual that no single term for any offense adequately reflects the seriousness of the offender's conduct; or (c) the offender's history of criminal conduct demonstrates the necessity of consecutive sentences to protect the public from future crime. *State v. Jones*, 8th Dist. Cuyahoga No. 104152, 2016-Ohio-8145, ¶ 10, citing *State v. Smeznik*, 8th Dist. Cuyahoga Nos. 103196 and 103197, 2016-Ohio-709, ¶ 6.

**{¶14}** The trial court made all the findings, and Esner is not challenging that aspect or whether the record supports the findings under R.C. 2953.08(G)(2). Instead, Esner challenges the sentence based on the trial court's consideration of purported irrelevant issues based on the trial court's language during the sentencing hearing. The trial court concluded, in light of Esner's extensive criminal history and inability to free himself from

a cycle of drug dependency and abuse, that the public would be better served if Esner could be indefinitely sent to an off-shore penal colony because Esner's death would likely be the only impediment to his recidivism. Further, the trial court voiced its displeasure with the "VA" offering to pay for Esner's drug treatment despite the fact that Esner was not entitled to "VA" benefits for one reason or another. As quixotic as we may find those statements, Esner has not challenged whether the findings were made. Nor has he challenged whether those findings were supported by the record. The starting point for our review is to consider that which the law requires, not the trial court's obiter dictum.[2]

{¶15} The trial court found that

consecutive sentences are necessary to [(1)] protect the public from future crimes and to punish you and [(2)] consecutive sentences are not disproportionate to the seriousness of your conduct and to the danger that you pose to the public. Your criminal history is just — it's amazing. And you committed this offense while you were under Post-Release Control. And so [(3)] I do find that your history demonstrates that consecutive sentences are necessary, obviously, to protect the public from future crimes by you.

Thus, all three findings were made. R.C. 2929.14(C)(4). Further, Esner has not provided us a basis to conclude that the record does not support the findings, and we cannot review the individual sentences under R.C. 2953.08(A)(2) because the trial court specified that Esner committed the offenses while on postrelease control under R.C.

---

[2]This is not to say that statements by the trial court will always be dismissed as irrelevant. We were asked to review the imposition of consecutive sentences under R.C. 2953.08(G)(2). In this respect, we were given an extremely narrow question to answer.

2929.13(B)(1)(b)(xi).    Our sentencing review is limited, and upon the arguments presented, we cannot conclude that any error occurred.

{¶16} Finally, we do agree that the imposition of restitution was contrary to law.[3] The trial court may impose restitution in an amount based on the victim's economic loss. R.C. 2929.18(A)(1).    If restitution is imposed, the amount shall be determined from the amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost to repair or replace, or any other information, as long as the restitution does not exceed the economic loss suffered by the victim.    *Id.*

{¶17} In this case, the state represented that the named victim, the church, had not been financially harmed by Esner's conduct and did not request any restitution.    The trial court then assumed that a financial institution was harmed, although the state indicated that the checks were never cashed by the financial institution.    The amount of restitution for FirstMerit Bank is not derived from any fact in the record, any information in the presentence investigation report, or any statements by the state, the victim, or the defendant at the sentencing hearing.

{¶18} Even if ordering restitution to be paid to a financial institution instead of the named victim is permitted by R.C. 2929.18(A)(1), at the least, there has to be evidence of an economic injury suffered by that institution.    *State v. Sailes*, 8th Dist. Cuyahoga No. 103095, 2016-Ohio-5132, ¶ 12 (Stewart, J., concurring) (a "victim" as contemplated under R.C. 2929.18(A) may include those who suffered a financial loss as a result of the

---

[3]Esner objected to the restitution at his sentencing to preserve this issue for appeal.

offender's conduct regardless of whether named as the victim in the indictment or information); *but see State v. Aguirre*, 144 Ohio St.3d 179, 2014-Ohio-4603, 41 N.E.3d 1178, ¶ 1 (noting the legislature amended R.C. 2929.18(A)(1) to delete the authority to order restitution to "third parties for amounts paid to or on behalf of the victim"). The trial court's supposition is insufficient to satisfy the rigors of R.C. 2929.18. *In re T.C.*, 8th Dist. Cuyahoga No. 102632, 2015-Ohio-4384, ¶ 19 (trial court abused its discretion by imposing restitution without competent, credible evidence supporting the amount of economic loss suffered by the victim). The trial court's presumption that FirstMerit was harmed by Esner's conduct could result in a double recovery, and that risk is the reason R.C. 2929.18(A)(1) requires a demonstration of actual economic loss to be considered by the trial court before restitution may be imposed.

**{¶19}** Accordingly, we reverse and vacate the imposition of restitution and remand for the sole purpose of correcting the final sentencing entry to delete the order of restitution. We affirm the convictions in all other respects.

**{¶20}** Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

It is ordered that appellant and appellee share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having

been affirmed, any bail pending appeal is terminated.   Case remanded to the trial court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, JUDGE

TIM McCORMACK, P.J., and
EILEEN T. GALLAGHER, J., CONCUR